**TOWN OF ORANGETOWN, Plaintiff,**

v.

**William RUCKELSHAUS, et al., Defendants.**

**No. 83 Civ. 6015(RO).**

United States District Court, S.D. New York.

Jan. 13, 1984.

Winer, Neuburger & Sive, P.C., New York City, for plaintiff; David Sive, New York City, of counsel.

Berle, Butzel, Kass & Case, New York City, for Rockland County Sewer Dist. No. 1 and County of Rockland; Peter A.A. Berle, Carol A. Buckler, New York City, of counsel.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendant Henry G. Williams, as Com'r of the N.Y. State Dept. of Environmental Conservation; James Periconi, Mary Lyndon, Asst. Attys. Gen., New York City, Environmental Protection Bureau, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for William Ruckelshaus, individually and as Adm'r of the U.S.E.P.A., et al.; Carolyn Simpson, Asst. U.S. Atty., New York City, of counsel.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiff Town of Orangetown commenced this latest action seeking for the

second time in as many years to enjoin defendants United States Environmental Protection Agency (E.P.A.) and New York State Department of Environmental Conservation (D.E.C.) from taking steps to process a grant of money to defendant Rockland County Sewer District (R.C.S.D.) for reconstruction of its sewage treatment plant. Defendants have moved to dismiss, asserting that most of the claims raised in the instant action were resolved in defendants' favor in the lawsuit between the same parties in this Court last year, and either that plaintiff has failed to state a cause of action or that defendants are entitled to summary judgment as to the remaining claims. Defendants have also moved for attorneys' fees for the portion of this action barred under the doctrine of *res judicata* by determinations in the prior proceedings in this Court and the Court of Appeals for the Second Circuit. For the reasons set forward below, the complaint is dismissed in its entirety.

This litigation concerns the continuing efforts of R.C.S.D., with the financial and technical support of E.P.A. and D.E.C., to expand and upgrade its admittedly outmoded sewage treatment facilities. Pursuant to 40 C.F.R. § 35.903(a), federal grants for such efforts are divided into three steps. The Step 1 grant for facilities planning was made to R.C.S.D. in 1976. The Step 2 grant for plans and specifications was made in September, 1980 and detailed plans were drawn up based on the facilities plan developed in Step 1. Step 3, which is the subject of this litigation, involves the actual construction of the treatment facilities planned in Steps 1 and 2. Step 3 has been segmented into the separate phases of construction of this fairly substantial project.

Phase I of the Step 3 grant, which was for construction of odor control mechanisms and other work on the R.C.S.D. facilities, was awarded in October of 1982, Phase II of the Step 3 grant, which covers the actual expansion and renovations of the

plant, was awarded on June 3, 1983. R.C. S.D. objected to one of the Special Grant conditions attached to the initial Phase II grant and refused to accept the award unless it was changed. After a period of reconsideration, which will be discussed herein, E.P.A. amended this condition, which had limited the sewage hookups to be allowed before the expanded waste treatment system was completed. On June 27, 1983, R.C.S.D. accepted the Phase II grant with the modified Special Condition.

In October, 1981, the Town of Orangetown filed its first action against R.C.S.D., E.P.A., D.E.C., Rockland County and the Town of Ramapo. *Orangetown v. Gorsuch,* 81 Civ. 1197 (RO). That complaint included claims that this grant, then in Step 2, required an impact statement pursuant to the New York State Environmental Quality Review Act ("SEQRA"), that in making the grant award E.P.A. violated the National Environmental Policy Act (N.E.P.A.) by failing to prepare an Environmental Impact Statement, and that the grant award violated various requirements of the Clean Water Act (C.W.A.). Orangetown also asserted that the R.C.S.D. plant constituted a nuisance and R.C.S.D. counterclaimed that the adjacent plant operated by Orangetown constituted a nuisance.[1]

After close to a year of discovery, the action proceeded to trial on October 12, 1982. Discovery had been expedited and an early trial date set because R.C.S.D. was unable to issue bonds to begin work on the project while the action challenging the grant was pending. At the beginning of trial, Orangetown amended its complaint to include Step 3, Phase 1 of the project. After an eleven-day trial, I dismissed Orangetown's claims and R.C.S.D.'s counterclaim of nuisance. These conclusions and the findings of fact made in their support were upheld by the Court of Appeals for the Second Circuit in a detailed opinion. *Town of Orangetown v. Gorsuch,* 718 F.2d 29 (2nd Cir.1983).

---

1. While both plants are located in Orangetown, Orangetown does not use the R.C.S.D. facility, but operates its own plant.

After the issuance of this Court's opinion in *Orangetown v. Gorsuch*, but before the Court of Appeals affirmed, Orangetown sued again. It now raises three objections to the award of the Step 3, Phase II grant. First, plaintiff contends that E.P.A. and D.E.C., to which E.P.A. has delegated the authority to make certain findings, did not make all the determinations required by 40 C.F.R. § 35.925 and 33 U.S.C. § 1284. Second, it asserts that E.P.A. improperly amended Special Grant Condition 3, which limited additional hookups to the County plant before its expansion was complete, in response to "intense political pressure." Finally, plaintiff contends that E.P.A. improperly failed to determine whether a "significant change" has occurred in the project or its impact, as described in the facilities plan, in violation of 40 C.F.R. § 6.502(a)(2).

I. Required Determinations Under 40 C.F.R. § 35.925 and 33 U.S.C. § 1284.

■ Plaintiff concedes that the R.C.S.D. plan is not different from the plans developed in Step 2 and approved by this Court and the Court of Appeals in *Orangetown v. Gorsuch*. In fact, it is conceded that much of the subject matter of the instant action was reviewed and determined in the earlier suit. Plaintiff has, accordingly, abandoned most aspects of its claim that E.P.A. and D.E.C. failed to make the requisite findings under 40 C.F.R. § 35.925 and 33 U.S.C. § 1284. (Sive affidavit of October 20, 1983 at ¶ 13). Plaintiff continues to assert that, notwithstanding the decisions in *Orangetown v. Gorsuch*, seven such determinations were improperly neglected. Defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56 as to each of these remaining determinations.

The essential determinations which E.P.A. had to make in support of its basic award of the instant grant were all specifically considered by the Court of Appeals in *Orangetown v. Gorsuch:*

Orangetown contends that E.P.A. failed to assess and make specific findings required by 40 C.F.R. §§ 35.925–1 through 35.925–21. These sections set forth a series of conditions that E.P.A. must find to exist prior to the award of a grant under the construction grants program for sewage treatment works. We note, however, that while a clear and concise document outlining *seriatim* the agency's response to the demands of Section 35.925 would be of considerable assistance to a court's review of E.P.A.'s actions, the regulations do not require that the agency's actions be set down in any particular order or form, or even that its determinations be made in writing. All that is necessary is that a reviewing court be able to trace from the written record the path followed by the agency in deciding to take a particular action. *See generally Bowman Transportation, Inc. v. Arkansas Best Freight System, Inc.*, 419 U.S. 281, 285–86 [95 S.Ct. 438, 441–42, 42 L.Ed.2d 447] (1974). (footnote omitted). *Town of Orangetown v. Gorsuch, supra,* at 40.

Assessing Orangetown's new attack, it seems clear from the record before me that E.P.A. has met this requirement as to each of the determinations which plaintiff continues to challenge. Most of these determinations were made prior to Phase II of Step 3 of the instant grant by a process that was held to be acceptable by this Court and the Court of Appeals in the earlier action:

Although there is no separate document listing specific determinations with respect to every element in 40 C.F.R. at § 35.925, taken as a totality, the Administrative Record reflects that the objectives of 40 C.F.R. § 35.925 were accomplished and therefore E.P.A. complied with its terms. *Orangetown v. Gorsuch*, No. 81 Civ. 1147, Slip Op. at 9 (S.D.N.Y. Jan. 24, 1983).

It is unclear whether plaintiff has any right to raise these objections now or whether these and any claims which could have been raised in the prior action are barred as *res judicata*, see *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). Nevertheless, as defendants have moved for summary judgment as

to these allegations which, it is asserted, are frivolous in the extreme, I will examine each briefly. The absurd nature of most of these challenges to a grant already underway and sustained after earlier litigation brought by the plaintiff is certainly relevant to the issue of attorney fees, which I address in detail hereafter.

Plaintiff asserts that E.P.A. failed to determine that the public participation requirement of 40 C.F.R. § 35.2040 was certified by the state. This assertion is contradicted by the grant application materials, which include such certification. The Grant Application Checklist, which the state prepares and forwards to E.P.A., also indicates that such certification was obtained. Plaintiff next charges that the defendants have not met the requirement of 40 C.F.R. § 35.2105 that an applicant indicate if any facilities planning or design on the project was done by anyone whose name appears on a master list of debarments. The E.P.A. Grant Application Checklist states that this simple requirement was met. As with all these requirements, plaintiff offers no facts or even arguments to indicate that there was any error on E.P.A.'s part in this determination. It simply and, on this record, incredibly asserts that the determination was not made clearly enough for this Court to review.

Next, plaintiff argues that E.P.A. did not clearly determine that the draft plan of operation, submission of which is required by 40 C.F.R. § 35.2106, was in fact submitted. Receipt of this draft plan was recorded on the Grant Application Checklist, and a copy of the plan has been submitted by D.E.C. to this Court.

Plaintiff asserts that the requirements of 40 C.F.R. § 35.2114 that an applicant conduct value engineering—a cost review process—was not the subject of a proper determination. The cost effectiveness and value engineering of this project has been considered from an early date, as evidenced by the Environmental Assessment and the Grant Application Checklist.

Plaintiff also argues that 40 C.F.R. § 35.2120, which requires that a grant applicant demonstrate to the satisfaction of the E.P.A. Regional Administrator that the proposed system will not be subject to excessive infiltration and inflow has not been satisfied. R.C.S.D. submitted interim and final evaluations of inflow capacity and the Grant Application Checklist indicates satisfaction with the submissions regarding the inflow of sewage. The related design requirements of 40 C.F.R. § 35.925–7 were specifically litigated in *Orangetown v. Gorsuch.*

Next, plaintiff asserts that E.P.A. failed to determine, as required by 40 C.F.R. § 39.2118, what pre-award costs incurred by R.C.S.D. were eligible for federal funding. Item 3 on the Grant Application Checklist indicates that E.P.A. has reviewed this and all other financial factors for the instant grant.[2]

Finally, Orangetown claims that the agencies' findings with regard to environmental review of the project, pursuant to 40 C.F.R. § 35.2113, are not clearly documented. This claim borders on the incredible. At the time E.P.A. performed its environmental review, a thirty-four page environmental assessment was produced, and all evidence in the record before me supports D.E.C.'s certification on the Grant Application Checklist that the project has not changed since that assessment was conducted. The specific "significant changes" in the project which plaintiff alleges require further review are discussed herein.

II. The Amended Special Grant Condition.

It is undisputed that R.C.S.D. refused to accept the Step 3, Phase II grant award unless Special Grant Condition 3, as it appeared on that initial award, was modified. Upon being informed of that refusal, E.P.A. reconsidered the special condition

---

**2.** The requirement of 40 C.F.R. § 35.925–17 which plaintiff also seems to raise, has been deleted from the new C.F.R. regulations and it is therefore unnecessary to consider it in the instant action.

and modified it.[3] Plaintiff alleges that this modification was not made for proper reasons but in response to "political pressure" from elected officials who contacted the E.P.A. in support of modification of the condition. Having made such an allegation, and proffered evidence that several public officials contacted E.P.A. on this subject, plaintiffs assert that they are entitled to discovery and a trial on the issue of political influence in the E.P.A.'s decision to modify the condition.

■■■ The decisions of administrative agencies may be challenged if "unlawful factors have tainted the agency's exercise of its discretion." *Save the Bay, Inc. v. Administrator of E.P.A.*, 556 F.2d 1282, 1295, (5th Cir.1977). This includes improper political considerations. *D.C. Federation of Civic Associations v. Volpe*, 459 F.2d 1231, (D.C.Cir.1971). However, to state a cause of action for improper political influence on an administrative agency, there must be some factual basis for a claim that: 1) the content of the pressure on the agency was designed to force it to decide upon factors not made relevant by Congress in the applicable statute; and 2) the agency's determination must have been affected by those extraneous considerations. *Sierra Club v. Costle*, 657 F.2d 298, 409 (D.C.Cir.1981).

Plaintiffs' allegations of improper political influence in the instant action are based on the fact that a state senator and others sought to urge upon E.P.A. the impracticality of the original Special Grant Condition's imposition of imposing a total ban on sewage hookups in the area until the expansion of the R.C.S.D. plant was completed. The exhibits offered show that opponents of this condition argued, with some force, that this would eliminate growth in the County for years and that a more moderate limitation would be more appropriate. There is no evidence in the record of any pressure based on improper or irrelevant factors. The E.P.A. records outlining the agency's reconsideration of the condition, in light of R.C.S.D.'s refusal to accept the grant under its terms, show a reasoned process of considering relevant factors. E.P.A. determined that a total ban on sewage hookups to the R.C.S.D. plant would result in untreated sewage being discharged into the environment or in a moratorium on construction in Rockland County. Plaintiff does not suggest that an increase in the discharge of untreated sewage or the impact of a sewage hookup ban on the economic life of the County, which were the essence of the "political" objections to the condition, are forbidden subjects for agency consideration in such a discretionary matter.

Furthermore, the record indicates that the original Special Grant Condition 3 was the result of a misunderstanding between E.P.A., D.E.C. and R.C.S.D. The "modified" Special Grant Condition 3 for the instant grant is, in fact, virtually identical

---

**3.** The original Special Condition 3 stated:

3. SEWER CONNECTION PROHIBITION
The grantee [the Sewer District] is prohibited from making connections to the Rockland County Sewer District No. 1 (RCSD No. 1) facilities until the modifications and expansion of the RCSD No. 1 wastewater treatment plant [the County plant] have been completed and the facility is meeting final NPDES and SPDES permit limits. The only wastewater flows permitted into the RCSD No. 1 facilities are new connections that are certified by the Rockland County Department of Health as being imminent health hazards.

As revised it stated:

SEWER CONNECTION PROHIBITION
The Grantee is prohibited from making connections into the Phase I facilities (the South Mountain Road and North Little Tor interceptors, the Union Hill and Tallman pumping stations and their force mains as described in the C30674401 grant) until the modifications to the [County] plant are completed and the facility is operating satisfactorily. The only wastewater flows permitted into the Phase I facilities are as follows:

a. New connections that are certified by the Rockland County Department of Health and the State Health Department as being imminent health hazards.

b. The wastewater flow above the design capacity of the Town of Ramapo Sewer District Number 62 plant and the total wastewater flow from the Red Rock treatment plant. These diversions must be requested and approved through mechanism delineated in the Grantee's National Pollutant Discharge Elimination System permit.

to a special condition limiting sewer connections in the earlier grant awards for the R.C.S.D. sewer project. This earlier condition was intended to prevent overloading of the outmoded R.C.S.D. plant due to the federally funded expansion of other town sewer facilities. The imposition of a total hookup ban was a departure from this earlier policy and was reasonably and rationally withdrawn after E.P.A. and D.E.C. re-evaluated its consequences. Plaintiffs' claim that, based on an innocuous letter from a state senator urging review of this condition, it may challenge and delay the expansion of the R.C.S.D. plant, which will make any such limitation unnecessary, is unreasonable as a matter of policy and wrong as a matter of law. Plaintiff has failed to state a claim on which relief may be granted as to the amendment of Special Condition 3.

### III. Allegations of "Significant Change" in the Project.

■ The facilities plan for the R.C.S.D. project has already been the subject of full environmental review, after which it was determined that an Environmental Impact Statement (EIS) was not required. A Finding of No Significant Impact (FNSI) was then issued, pursuant to 40 C.F.R. § 6.105. The environmental review of the project and E.P.A.'s decision not to issue an EIS were specifically upheld in *Orangetown v. Gorsuch.* Plaintiff now asserts that the E.P.A. regional administrator had an affirmative duty to make a determination that three alleged "significant changes" have taken place in the project that require a new environmental review.

Plaintiff cites 40 C.F.R. § 6.502(a)(2) as the basis for this claim. This section provides that E.P.A.'s environmental review procedures apply to the:

Award of grant assistance for a project involving Step 2 or Step 3 when the responsible official determines that a significant change has occurred in the project or its impact from that described in the facilities plan.

This provision must be read in the context of 40 C.F.R. § 6.507(e) which provides that:

Once a FNSI and environmental assessment have been prepared for the facilities plan for a certain area, grant awards may proceed without preparation of additional FNSIs, unless the responsible official has determined that the project has changed significantly from that described in the facilities plan.

Thus, E.P.A. is not responsible for making a "determination" that every change, no matter how minuscule, in the project or its impact is not "significant" for the purposes of these regulations. Incredibly, plaintiff seems to assert that this is the case, and that the agency must document each such decision so that a Court may review it.[4]

Plaintiff's position on this issue is a clear misinterpretation of the obligation imposed on E.P.A. by these regulations. Furthermore, the record before me supports defendants' contention that plaintiff has presented no change which could possibly justify a new environmental assessment. The first significant change plaintiff alleges has taken place in this project is an increase in the estimated future inflow of wastewater to the R.C.S.D. plant. In *Orangetown v. Gorsuch,* plaintiff raised this issue and the Court of Appeals held that, even if E.P.A. slightly underestimated the maximum projected flow into the plant in the year 2000, that was not a basis for overturning E.P.A.'s approval of the project as arbitrary and capricious. Slip op. at 21.

Plaintiff now asserts that the slightly larger estimate of inflow in a report prepared in 1981, but not considered by the Court in *Orangetown v. Gorsuch,* requires a new environmental review. This is not an allegation of "significant change" in the project or its impact, but only of a possible

---

**4.** Plaintiff asserts that: "if the Second Circuit's determination that no written determination of the § 35.925 findings was required is extended to the required determination of the absence of a significant change in the project, then this Court must be able to trace the path followed by the agency in deciding ..." that there is no significant change. Plaintiff's memorandum of law at 41.

revision of estimated future inflow. The study on which plaintiff relies was conducted by URS Company, which provides consultants to R.C.S.D. It was considered by E.P.A. prior to the Step 3 Phase II grant award and, the administrative record indicates, found not to justify modification of the project. The report itself concludes that "the increased flow was not significant enough to necessitate a change in the design of the units."

Plaintiff has also asserted that the R.C.S.D. project has inadequate outfall capacity. This issue was litigated in *Orangetown v. Gorsuch* and determined in favor of R.C.S.D. Once again, plaintiff bases its allegation of "significant change" on some new estimates of the plant's future wastewater level and, once again, the report on which plaintiff relies concludes that the new projections do not require modification.[5]

Plaintiff's second allegation of a "significant change" concerns the location of the composting unit of the R.C.S.D. project. The project's Facilities Plan lists the Clarkstown landfill as the site for the composting facility. According to the affidavits of everyone involved in the project, this is still the site. Plaintiff's allegation of change is based on the unsupported representation of plaintiff's counsel that certain citizens of Clarkstown intend to file an action challenging its location in their community. The belief of plaintiff's counsel that such litigation *may* take place in the future is no basis for a finding that any change has taken place in the R.C.S.D. project.

Finally, plaintiff asserts that the segmentation of Step 3 of the R.C.S.D. project into separate steps is a significant change which requires a new E.P.A. analysis of the project's finances. This assertion is not supported by anything in the record before me or in the regulatory scheme for such projects. Plaintiff has failed to assert any

basis for the allegation that Rockland County will not complete the renovation of its plant. The county has pledged that it will finish the project if federal funding is interrupted. Such a pledge is all that is required by the relevant regulations. See 40 C.F.R. § 35.2108.

## IV. Attorney's Fees.

■ As indicated above, plaintiff has advanced no claims with any merit whatsoever. After reviewing the record before me, one might well conclude that this action was commenced essentially to block or hinder progress on the R.C.S.D. plant, and not to raise truly entertained grounds of opposition of sufficient magnitude to justify reappraisal of the projects. One notes that as long as there is litigation challenging the grant award with which E.P.A. will reimburse R.C.S.D. for its expenditures, the county is unable to issue bonds to fund those expenditures. Thus these actions have had the effect of delay. While motive can often be gleaned from conduct, I believe a further inquiry is required here before attorney's fees may be awarded under the standard set forth in *Nemeroff v. Abelson*, 704 F.2d 652 (2d Cir.1983).

The parties are therefore directed to appear before me on January 27, 1984 at 12:00 noon in Courtroom 128 to establish further procedures.

As to the merits, the complaint is dismissed as to all defendants with costs and disbursements.

The foregoing is so ordered.

---

**5.** The URS Evaluation of the Rockland County Wastewater Treatment Facility Outfall Sewer System, dated May, 1982, was introduced into evidence in *Orangetown v. Gorsuch*. This report was revised in March, 1983. The revised report's findings are what plaintiff asserts provide the basis for its allegations of significant change.